SAMUEL CHILDS & others *vs.* JAMES RUSSELL & another.

A testator, after giving several legacies, and bequeathing an annuity of $500 to his wife, during her life, added the following residuary clause to his will: "After the payment of my just debts, funeral expenses and money legacies, I will and order my executor hereinafter named to vest in stock, or keep at interest, all the rest, residue and remainder of my personal estate, to raise a fund out of which the annuity to my said wife is to be paid during her natural life; and after her decease, should she survive me, I will and order that all the rest, residue and remainder of my estate, real, personal or mixed, shall be divided among my heirs, according to law, excepting the share which will by law descend to my daughter E.": The testator's wife survived him, and received her annuity while she lived. *Held,* that the time of distribution only, and not the right to a distributive share, was postponed till after the decease of the wife, and that, upon her decease, those who were the testator's heirs at law at the time of his decease, or the legal representatives of such of them as died after him and before his wife, were entitled to the property disposed of by the residuary clause in the will.

THIS was a bill in equity, in which it was alleged that on the 6th of August 1823, Seth Wyman, then of Marblehead, father of some of the plaintiffs, and grandfather of the other plaintiffs, made his last will, by which, after devising certain real property, and bequeathing certain legacies, he devised,

bequeathed and ordered as follows : " I give and bequeath to my beloved and faithful wife, Ruthy, all my household furniture, together with the sum of five hundred dollars a year to be paid by my executor hereinafter named, to the said Ruthv in equal quarterly payments, in each and every year, during her natural life.  I also give and bequeath to my said wife the use and improvement of one half of the Wheeler house, situate in West Cambridge, or such part of the said house as she may select, together with such privileges as she may want for the enjoyment of said house, to hold for and during her natural life.  After the payment of my just debts, funeral expenses and money legacies, I will and order my executoi hereinafter named to vest in stocks, or keep at interest, all the rest, residue and remainder of my personal estate, to raise a ˜und out of which the annuity to my said beloved wife is to be paid during her natural life ; and after her decease, should he survive me, I will and order that all the rest, residue and remainder of my estate, real, personal or mixed, and of whatsoever name or nature, shall be divided among my heirs according to law, excepting the share which will by law descend to my daughter, Elizabeth Childs, which share I will and order it placed in the hands of Luke Wyman of Charlestown, trustee to the said Elizabeth, to be by him managed, and the interest arising from which I will and order the said trustee to appropriate for her maintenance and support, in the way and manner he may think advisable, and at her decease to be equally divided among her children.  And I hereby appoint Luke Wyman of Charlestown, in the county of Middlesex, sole executor of this my last will and testament.'·

The bill further alleged, that the testator died in April 1825, and that his said will was duly proved and allowed on the 26th of said April ; that at the time of the making of said will and at his decease, the testator had the following named children and heirs at law, then living, or deceased leaving issue, viz. (1.) Martha Russell, widow, now in full life, and one of the daughters of the said testator ; (2.) Joseph S. Wyman, a son of the testator, who died in June

2 *

1816, leaving five children, his heirs at law; (3.) Ruth Wyman, his daughter, now in full life; (4.) Elizabeth Childs, his daughter, who was the wife of Solomon Childs, and who died in August 1824, leaving three children, her heirs at law; (5.) Samuel Wyman, a son of the testator, who died in January 1816, leaving two children, his heirs at law; (6.) Sophia Hathaway, a daughter of the testator, now in full life; and (7.) Sally Childs, widow, a daughter of the testator, who died in September 1829, leaving only one child, a daughter named Sophia W., who intermarried with J. H. Kimball, in April 1828, and died in February 1830, without ever having had issue born alive; and that said J. H. Kimball, in March 1841, was duly appointed administrator of her estate.

The bill further alleged, that after the said will had been proved and allowed, the executor therein named took upon himself the trust of executor and continued to hold it until the 21st of February 1832, when he was removed from said trust by the judge of probate, and James Russell, one of the defendants, was duly appointed administrator *de bonis non* of said testator, with the will annexed, and gave bond and took upon himself said trust, and proceeded to execute the same : That the said Ruthy, widow of the testator, survived him, and received the annuity bequeathed to her by him, arising from the aforesaid rest, residue and remainder of his estate, which was set apart, by said will, as a fund for raising said annuity, until her decease, which was in May 1842 : That upon her decease, the limitations over of the said fund took effect, and the plaintiffs, (namely, all the aforesaid children and grandchildren of the testator, except the representative of his daughter, Sarah Childs,) as the heirs at law of the testator, became entitled thereto : That the said Russell, administrator as aforesaid, declares that the said J. H. Kimball pretends to be entitled to one seventh part of said fund, which his wife, Sophia W., would have been entitled to, if she had survived Ruthy Wyman, the testator's widow; and that said Russell therefore withholds from the plaintiffs a large sum, to wit, ten thousand dollars, part of the said fund : That said Kimball

pretends that his said wife, after her intermarriage with him had a child born alive, which child survived her, and that he, in some way, can make a title to one seventh part of said fund, through the said child: But the plaintiffs deny that any such child was born alive, or that any interest in said fund could vest in said Kimball's wife, or in any child of hers, if she had any child born alive.

The prayer of the bill was, that said Russell and Kimball might make answers on oath, and that said Russell might state an account of said fund, showing all receipts and payments by him, and the amount in his hands, and be decreed to pay to the plaintiffs the sum to which they are justly entitled.

The answer of J. H. Kimball admitted the main facts alleged in the bill, and averred that on the 10th of December 1838, his wife, Sophia W., was delivered of a child, but whether said child was born alive, or not, he did not certainly know, but he had been informed, and he believed, that said child was not born alive. But he denied that he ever made claim to any of the estate of the said Seth Wyman, the testator, by or through the said child, or in any other way than in right of his said wife, on whose estate he took out letters of administration, as set forth in the plaintiff's bill, and thereby became entitled, on the decease of said Ruthy Wyman, to one seventh part of said fund in the hands of said Russell.

The answer of James Russell, admitting the main facts alleged in the bill, contained an account, as prayed for in the bill, alleged the investment of the said rest and residue of the testator's personal property, and the payment to his widow, quarter yearly, of the annuity bequeathed to her, and stated a readiness to pay to each of the heirs at law of said Seth Wyman, entitled to said fund, the share thereof respectively due to them ; and he prayed that the court would direct him to whom the said fund should be paid.

The argument was had at the last March term.

*B. R. Curtis,* for the plaintiffs.

*C. G. Loring,* (*Nelson* was with him,) for the defendants.

SHAW, C. J. The present is a suit in equity by Samuel

Childs and others, being all the children and grandchildren of Seth Wyman, late of West Cambridge, deceased, who were surviving at the time of the decease of Ruthy Wyman, widow of the testator, claiming the whole of the personal estate of the said deceased, which remained at the decease of the widow. The administrator with the will annexed and the defendant Kimball insist that the complainants are entitled to six seventh parts only of the said fund, and that the said Kimball, upon the facts stated, is entitled to one seventh part. This depends upon the question, whether, by the construction of Seth Wyman's will, this fund vested in his legatees at the time of his decease, the right of actual possession and enjoyment of the distributive shares being postponed to the decease of the widow ; or whether the bequest was contingent until the decease of the widow, and vested on that event. In the former case, the estate would be divided into seven parts, and one go to each child then living, or to the children of any deceased child by right of representation. The fact on which the question depends is, that at the time of the decease of the testator he had one daughter living, Sally Childs, a widow, who died in the life time of the testator's widow. This daughter left one child surviving her, Sophia W. Childs, who intermarried with the defendant Kimball. She died having given birth to a child. It is left doubtful by the case, whether such child was born alive ; but we do not consider that fact material. The defendant Kimball took out letters of administration on the estate of his wife, and being entitled to the whole of her personal property by the statute of distributions, whatever interest the deceased wife took in the personal estate belonged to the surviving husband. If, then, this estate did not vest till the decease of the widow, the daughter, Sally Childs, having then deceased, took no interest under the will, and of course transmitted none to her daughter. But if the estate vested in right, though not in possession, at the decease of the testator, then a distributive share vested in the daughter, Sally Childs, and the complainants, being the other children and grandchildren collectively

would be entitled to six sevenths only of the fund in question.

The testator, after various gifts and devises of real and personal property, to all his children and grandchildren, introduces the clause on which the question depends. This will was made on the 6th of August 1823, and the testator died in April 1825. In the mean time, August 1824, his daughter, Elizabeth Childs, for whom certain property was directed to be placed in trust, died.

The provision in the will is as follows: He gives to his faithful and beloved wife, Ruthy Wyman, all his household furniture, with $500 a year in quarterly payments, to be paid by his executor, during her life, together with certain real estate for her life. He then directs his executor, after the payment of debts and money legacies, to vest in stocks or keep at interest all the rest, residue and remainder of his personal estate, &c. [Here the judge recited the clause in the will, which is set forth in the bill, *ante*, 17.] The same Luke Wyman, who was appointed trustee of the share of the testator's daughter Elizabeth, was appointed sole executor of the will.

Perhaps it is not very material to consider whether it was the intent and expectation of the testator, that this property, after the decease of his wife, should pass to his heirs at law as intestate property, of which it was not his intent to make any further disposition, or whether the term "heirs" was used as descriptive only of the persons who should take by force of his will. The latter seems to be the more probable, because he uses disposing words, such as usually constitute a disposition by way of bequest and devise, and especially as he has made a disposition of one share in trust, viz. that to his daughter Elizabeth, speaking of it as the share which would *descend* to her, in a manner wholly inconsistent with the intent to make no disposition of it by his will, and to leave it to descend, as intestate estate, according to law. We, therefore, are to understand the word "heirs" as *descriptio personarum*, designating the children and grandchildren who

would take intestate property by force of the statute of distributions, and according to the right of representation, and the word " descend," as meaning the same thing as to pass or be transferred.

Thus understanding the will, the court are of opinion that this clause gave the residue of the personal estate, subject to the charge in the hands of the executor to raise the annuity for the widow, to those who were heirs of the testator at the time of his decease, and that the distribution only was postponed ; that consequently it was a vested interest ; that one seventh part of the whole vested in his daughter, Sally Childs, and therefore that the complainants are entitled to six seventh parts only, and not the whole of the fund.    This results from several considerations.

The fund itself was the whole of the testator's personal property, after payment of certain specific legacies, which was the subject of the bequest.    It was the estate to remain in the hands of the executor, *qua* executor, for distribution, charged with the payment of the annuity.    This distribution was postponed only so long as it was necessary to hold the fund to raise this annuity.    But the character of the fund was not changed.    It was held by force of the will and letter testamentary, as all personal property is held by an executor, to be appropriated according to law.    It was not given to the wife for her life, with remainder over; it was not given, in terms, to the executor, in trust for the wife.    It was directed to be put on interest, of course by the executor, in his capacity as executor, and held to raise the annuity, so long as necessary for that purpose, that is, during the life of the annuitant, and then to be distributed to his heirs.    It was a suspension of the distribution and payment, for an ascertained time; but in the mean time, we think, the right to the distributive shares vested in the heirs, to take effect in enjoyment upon the decease of the widow ; an event certain in itself, and contingent only in respect to the time it should happen.

It was intimated, in the argument for the plaintiffs, that inasmuch as the regular payment of the annuity was to be

made from the fund, and not from the income of the fund, it might happen that the whole fund would be exhausted, and so it was contingent whether any thing would remain to be distributed. But supposing that to be the true construction of the clause, it was not such a contingency as would prevent the bequest from vesting. It was a residue, and what the residue may be, and whether there will be any, may always be regarded, in such case, as contingent. The bequest is of what will remain, whether more or less. It may be diminished or increased by various causes; by bad investment, rise or fall of stock, or the collection or loss of debts due to the estate. But this will not render the gift of the residue contingent, so as to postpone the vesting to the happening of the event.

But even if the bequest were to the children of the testator living at his decease, if there should be any residue remaining at the time of the decease of his widow, this would give a contingent remainder to the daughter, not depending upon the contingency of her surviving her mother; and such a contingent remainder was an interest, which passed to her daughter upon her decease before her mother; and upon the death of the testator's widow, there being then a residue of the fund left to be distributed, it would go to the daughter as heir to her mother. This principle was fully settled, on consideration, in the late case of *Winslow* v. *Goodwin*, 7 Met. 363.

We consider that when a bequest is made to one or more for life, and remainder to the testator's heirs, or next of kin, or relations, or such persons as would take his estate by the rules of law if he had died intestate, the bequest is to those who are such heirs or next of kin at the time of his decease, unless there are words indicating a clear intention that it shall go to those who may be his relations or next of kin at the time of the happening of the contingency upon which the estate is to be distributed. Of course, if any one of such persons has deceased, between the death of the testator and the death of the person entitled for life, such share goes to the

representative of such deceased person. And it is no decisive or valid objection, that some of the persons thus designated to take in remainder are the same persons to whom an interest for life is thus given, so that the personal representative of such deceased tenant for life may take a share in the remainder, under the residuary clause ; though this circumstance, in connexion with other words or special circumstances, may be resorted to, to show that such was not the intention of the testator. *Doe* v. *Lawson*, 3 East, 278. *Rayner* v. *Mowbray*, 3 Bro. C. C. 234. *Masters* v. *Hooper*, 4 Bro. C. C. 207.

The claim of the plaintiffs cannot be established without showing that, by the terms of this will, it was the manifest intent of the testator that those only, who should survive and be his heirs at the time of the decease of his wife, were intended to take. Most of the cases cited by the plaintiffs were cases where the property was in the first instance given to trustees to hold for the heirs of certain persons, and then to make a distribution ; here it was the testator's own estate, in the hands of his own executor, never disposed of in property, but only the distribution postponed. This distinguishes it from the cases cited. But those cases do not contravene the position here laid down, to wit, that to arrive at the conclusion that the testator intended all those who were his heirs at law at the time of his decease, and then entitled to distribution, it must appear plainly from the will that he intended to limit the distribution to them who should be heirs at the time fixed for the distribution. Even the word " then " is often satisfied by the consideration, that it refers to those who shall then appear to be heirs, that is, to have been entitled to share in that capacity at the time of the testator's decease. In *Briden* v. *Hewlett*, 2 Myl. & K. 90, the will was construed to mean those who would be next of kin at the time of the happening of the contingency. *Butler* v. *Bushnell,* 3 Myl. & K. 232, is to the same effect. *Clapton* v. *Bulmer*, 10 Simons, 426, turned upon the question, what was intended by the term " family," as used in a will, under

particular circumstances. There is no case, we think, which sustains the position, that a bequest like the present would be held to be suspended till the death of the widow, and limited to those who would then be the heirs of the testator.

This decision, we think, is sustained by the cases of *Emerson* v. *Cutler*, 14 Pick. 108, and *Nash* v. *Cutler*, 16 Pick. 491.

The case of *Rayner* v. *Mowbray*, 3 Bro. C. C. 234, already cited, is a strong authority to both points, namely, that a residue to be divided amongst relatives must be construed to be next of kin, within the construction of the statute of distributions, and that, though distribution is deferred till the death of a wife, this does not prevent the bequest of the residue from being vested, and that distribution will be made to those who are then entitled by the statute of distributions, or, in case of their decease, to their personal representatives. To the same point are *Harrington* v. *Harte*, 1 Cox, 131; *Spink* v. *Lewis*, 2 Bro. C. C. 355; *Pope* v. *Whitcombe*, 3 Meriv. 689; and *Blamire* v. *Geldart*, 16 Ves. 314.

In the present case, we think it quite clear, that the terms " after her decease," (his wife's,) " the rest and residue, &c. to be divided among my heirs, according to law, except," &c., fix the time of the distribution, but do not limit the bequest to those who may then be heirs; and of course, that the right vested in those who were heirs at the decease of the testator. The direction that one share shall be held by the executor and trustee, for the benefit of the daughter Elizabeth Childs, cannot affect the construction, because there is no intimation in the will that it should so vest in the trustee at any particular time; and if we are right in the general construction of the will, it may as well be held, that the one seventh intended for the benefit of Elizabeth Childs, subject to a charge to raise an annuity for the mother, vested *in the trustee*, at and from the decease of the testator, as that the other shares so vested; and such, we think, is the construction.

There may be a question whether there ought not to be an

administration on the estate of the daughter, Sally Childs, before the defendant Kimball can take.    But it does not affect the decree in the present case, which only determines that the plaintiffs are entitled to six sevenths only out of the whole estate.    The administrator with the will annexed will take care to pay the other seventh part to a party entitled to take it and give a valid acquittance.    If an administration on the estate of the daughter Sally Childs is necessary, before her only daughter and heir at law, Mrs. Kimball, could be entitled, such an administration can be easily granted.